# No. 25-20230

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States of America,

Plaintiff - Appellee

v.

Aurelio Quintanilla, Jr.,

Defendant - Appellant

## On Appeal from
United States District Court for the Southern District of Texas
4:24-CR-434-1

## BRIEF OF APPELLANT AURELIO QUINTANILLA

SUBMITTED BY:
Daniel DeMaria
15 Cottage Avenue
Quincy, MA 02169
617-651-5577

1

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| United States of America | Carmen Mitchell of the United States Attorney's Office for the Southern District of Texas. |

| Appellant: | Counsel for Appellant: |
|---|---|
| Aurelio Quintanilla, Jr. | Daniel DeMaria of the Law Offices of Daniel DeMaria, Quincy, MA. |

| Other Interested Parties: |
|---|
| United States District Judge:  Hon. David Hittner |
| United States Magistrate Judge: Hon. Christina Bryan |

/s/Daniel DeMaria
**Daniel DeMaria**
Attorney of record for
Aurelio Quintanilla, Jr.

2

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is respectfully requested. This appeal challenges the enforcement of an appellate-rights waiver that was misstated during the Rule 11 colloquy, a statutory-maximum imposed in a non-production sentencing, and a life term of supervised release and restitution imposed without individualized findings. These issues go to the heart of a defendant's right to an informed plea, a reasoned and proportionate sentence, and a transparent record for review. The resolution of these issues carries broad implications for the administration of justice in this Circuit.

## TABLE OF CONTENT

**Page**

Certificate of Interested Persons — 2

Statement Regarding Oral Argument — 3

Table of Authorities — 7

Jurisdictional Statement — 10

Statement of the Issues — 11

Statement of the Case — 12

Statement of Facts — 14

Summary of the Argument — 15

**ARGUMENT** — 17

I.   The Rule 11 colloquy affirmatively misled Mr. Quintanilla about his appellate rights thereby broadening them — 17

  A.   Standard of Review — 17

  B.   Fifth Circuit precedent requires an accurate and complete Rule 11(b)(1)(N) colloquy — 17

  C.   The Rule 11 error affected Mr. Quintanilla's substantial rights — 19

  D.   Enforcing the waiver would seriously affect the fairness, integrity, and public reputation of the proceedings — 21

  E.   Because the Rule 11 colloquy was defective, the appellate waiver cannot be enforced — 22

**Page**

II.   The 240-month statutory-maximum term is substantively unreasonable   23

    A.   Standard of Review   23

    B.   A statutory-maximum term for a first-offense, non-production plea is an outlier in this Circuit and nationwide   24

    C.   The district court failed to justify a sentence which was greater than necessary under § 3553(a)   25

    D.   The statutory-maximum term overstates risk and undermines § 3553(a)'s parsimony principle   26

    E.   Remedy   27

III.   The Sentence is Procedurally Unreasonable   27

    A.   Standard of Review   27

    B.   The district court failed to address non-frivolous mitigation and policy arguments   27

    C.   The court treated the inflated guideline as dispositive and ignored its advisory nature   30

    D.   The lack of reasoning precludes meaningful appellate review   31

    E.   Remedy   32

IV.   The lifetime term of supervised release must be vacated   32

    A.   Standard of Review   32

    B.   The district court imposed a lifetime term of supervised release without individualized justification   32

    C.   Remedy   33

**Page**

V.    Restitution: Remand is required for a *Paroline*-compliant causation and apportionment analysis ........ 34

    A.    Standard of Review ........ 34

    B.    The district court conducted no *Paroline* analysis and made no findings of causation or apportionment ........ 34

    C.    The error satisfies every element of plain-error review ........ 36

    D.    Remand is required for a full *Paroline*-compliant determination ........ 36

Conclusion ........ 37

Certificate of Service ........ 38

Certificate of Compliance ........ 39

## TABLE OF AUTHORITIES

**Page(s)**

*Gall v. United States*, 552 U.S. 38 (2007) ......................... 23, 27, 29, 31

*Kimbrough v. United States*, 552 U.S. 85 (2007) ......................... 30

*Holguin-Hernandez v. United States*, 589 U.S. 169 (2020) ......................... 23

*Nelson v. United States*, 555 U.S. 350 (2009) ......................... 30

*Paroline v. United States*, 572 U.S. 434 (2014) ......................... 34, 35, 36

*Rita v. United States*, 551 U.S. 338 (2007) ......................... 25, 27-29, 31

*United States v. Alvarado*, 691 F.3d 592 (5th Cir. 2012) ......................... 33

*United States v. Baty*, 980 F.2d 977 (5th Cir. 1992) ......................... 22

*United States v. Bond*, 414 F.3d 542 (5th Cir. 2005) ......................... 18, 21

*United States v. Brown*, 892 F.3d 385 (D.C. Cir. 2018) ......................... 19, 23

*United States v. Buchanan*, 59 F.3d 914 (9th Cir. 1995) ......................... 19

*United States v. Dominguez Benitez*, 542 U.S. 74 (2004) ......................... 20

*United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010) ......................... 25

*United States v. Ellis*, 720 F.3d 220 (5th Cir. 2013) ......................... 32

*United States v. Fraga*, 704 F.3d 432 (5th Cir. 2013) ......................... 33

*United States v. Henderson*, 649 F.3d 955 (9th Cir. 2011) ......................... 30

*United States v. Herrera-Garduno*, 519 F.3d 526 (5th Cir. 2008) ......................... 30

*United States v. Jacobs,* 635 F.3d 778 (5th Cir. 2011) ......................... 17-18, 21-22

|  | **Page(s)** |
|---|---|
| *United States v. Jenkins*, 854 F.3d 181 (2d Cir. 2017) | 25-26 |
| *United States v. Melancon*, 972 F.2d 566 (5th Cir. 1992) | 18, 21 |
| *United States v. Miller*, 665 F.3d 114 (5th Cir. 2011) | 29 |
| *United States v. Mondragon-Santiago*, 564 F.3d 357 (5th Cir. 2009) | 27, 29 |
| *United States v. Olano,* 507 U.S. 725 (1993) | 17, 34 |
| *United States v. Portillo*, 18 F.3d 290 (5th Cir. 1994) | 21 |
| *United States v. Saferstein*, 673 F.3d 237 (3d Cir. 2012) | 19 |
| *United States v. Sanchez*, 667 F.3d 555 (5th Cir. 2012) | 28 |
| *United States v. Tisdale*, 264 F. App'x 403 (5th Cir. 2008) | 29 |
| *United States v. Vonn*, 535 U.S. 55 (2002) | 17 |
| *United States v. West*, 99 F.4th 775 (5th Cir. 2024) | 34-36 |
| *United States v. Winchel*, 896 F.3d 387 (5th Cir. 2018) | 34-35 |
| *United States v. Wood,* 378 F.3d 342 (4th Cir. 2004) | 19 |

| **Statutes and Rules** | **Page(s)** |
|---|---|
| 18 U.S.C. § 1291 | 10 |
| 18 U.S.C. § 2252A | 12 |
| 18 U.S.C. § 2259 | 35-36 |
| 18 U.S.C. § 3231 | 10 |

| **Statutes and Rules** | **Page(s)** |
|---|---|
| 18 U.S.C. § 3553(a) | passim |
| 18 U.S.C. § 3742 | 10 |
| Fed. R. Crim. P. 11(b)(1)(N) | 17, 18, 22 |
| Fed. R. Crim. P. 52(b) | 34 |
| U.S.S.G. § 2G2.2 | passim |

| **Sentencing Commission and Government Materials** | **Page(s)** |
|---|---|
| U.S. Sentencing Commission, *Federal Sentencing of Child Pornography: Non-Production Offenses* (2021) | 15, 24, 26 |
| U.S. Sentencing Commission, *Quick Facts: Child Pornography Offenses, Fiscal Year 2024* (2025) | 24 |
| U.S. Sentencing Commission, *Amendment-In-Brief: Supervised Release* (Apr. 2025) | 33 |

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 18 U.S.C. § 3231. On May 22, 2025, the court entered a final judgment imposing a 240-month term of imprisonment, a life term of supervised release, a $100 special assessment, and $17,500 in restitution. ROA.2, 8, 69, 72. Mr. Quintanilla filed a timely notice of appeal. ROA.74, 77. This Court has appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## STATEMENT OF THE ISSUES

Whether the district court's Rule 11 colloquy, which affirmatively told Mr. Quintanilla that he could "appeal any sentence," must be construed against enforcement.

Whether a statutory-maximum 240-month sentence for a non-production plea is substantively unreasonable where the advisory range was inflated by routine U.S.S.G. § 2G2.2 enhancements and the mitigating factors under 18 U.S.C. § 3553(a) strongly favored a lower term.

Whether the district court committed procedural error by disregarding non-frivolous mitigation and policy arguments and providing no meaningful explanation for the maximum sentence imposed.

Whether the lifetime term of supervised release must be vacated and remanded because the district court provided no individualized justification under § 3553(a) and seemingly imposed as a matter of course, contrary to this Court's precedent and the Sentencing Commission's 2025 policy revision.

Whether the restitution order must be vacated and remanded because the district court imposed restitution without conducting the proximate-cause and apportionment analysis required by *Paroline* and 18 U.S.C. § 2259, and without making individualized findings establishing reliability or a causal connection between the claimed losses and Mr. Quintanilla's conduct.

11

## STATEMENT OF THE CASE

**Proceedings Below**

Mr. Quintanilla was convicted by way of plea in the Southern District of Texas to transporting child pornography in violation of 18 U.S.C. § 2252A(a)(1) and (b)(1). ROA.68, 122. He pleaded guilty pursuant to a written plea agreement containing an appellate-rights waiver. ROA.122-137. At the Rule 11 hearing, the district court briefly canvassed Mr. Quintanilla's rights but did not explain the scope of the appellate-waiver provision or confirm that he understood he was surrendering his right to appeal. ROA.389-391. Instead, the court advised that "under some circumstances you or the Government may have the right to appeal any sentence that a Court imposes," and moved on. ROA.392. The Government did not correct the misstatement.

**Guidelines and PSR**

The Presentence Investigation Report applied the standard § 2G2.2 specific-offense characteristics in cumulative fashion, yielding a total offense level of 42 and an advisory range of 360 months to life, capped by the statutory maximum of 240 months. ROA.144-145, 149. The calculation reflected six enhancements frequently criticized as overlapping and ubiquitous in non-production cases: (1) prepubescent minors (+2); (2) distribution for valuable consideration (+5); (3) sadistic or violent depictions (+4); (4) pattern of activity (+5); (5) use of a computer (+2); and (6) 600

or more images (+5). ROA.144-145. Defense counsel noted the mechanical stacking of these factors and moved for a downward variance. ROA.95-97, 316-318. The defense emphasized Mr. Quintanilla's age (21 at the time of the offense), Criminal History Category I, full compliance on pretrial release[1], documented engagement in sex-offender treatment, a personal history of childhood sexual exploitation, and the Sentencing Commission's 2021 findings that § 2G2.2's enhancements are overbroad and all-but-inherent in most cases. ROA.96–97, 315–318. The Government recommended a 216-month sentence. ROA.104–107, 349.

**Sentence and Appeal**

Without addressing the variance arguments or explaining why a lower sentence would not suffice, the district court imposed the statutory-maximum 240-month term of imprisonment, a life term of supervised release, a $100 special assessment, and $17,500 in restitution. ROA.108-109. Mr. Quintanilla timely filed a notice of appeal. ROA.74-77.

---

[1] The second addendum to the PSR notes limited instances where Mr. Quintanilla left his residence without permission to "wander around his neighborhood." ROA.186. A petition for action on conditions of pretrial release was never filed, underscoring that pretrial services did not view any conduct as serious or warranting formal action. The limited instances of the defendant leaving his home can be inferred to have been brief, non-purposeful, and unconnected to any misconduct or effort to evade supervision.

**STATEMENT OF FACTS**

According to the undisputed factual basis, U.S. Customs and Border Protection Officers recovered digital images and videos depicting child sexual exploitation from Mr. Quintanilla's electronic devices as he returned home from a family vacation in Mexico. ROA.140-141. The materials were obtained online and stored locally. ROA.140-142.[2] Mr. Quintanilla admitted his conduct, cooperated with agents, and entered an early guilty plea. ROA.6, 141.

While on pretrial release, Mr. Quintanilla remained in compliance, maintained employment, and engaged in counseling. ROA.97, 317. The defense submitted letters attesting to his good character. ROA.320-339.

The record included undisputed evidence that Mr. Quintanilla himself was a victim of childhood sexual exploitation. ROA.141. The defense urged this history as a mitigating factor and as part of the individualized assessment required under 18 U.S.C. § 3553(a). ROA.96-97. His background, youth, and demonstrated responsiveness to treatment were presented as indicators of low recidivism risk, consistent with empirical findings in the U.S. Sent'g Comm'n, *Federal Sentencing*

---

[2] Mr. Quintanilla was forthright and fully cooperative during his interview, providing a detailed and candid account of his past conduct. He voluntarily disclosed information that was not otherwise known to law enforcement, including incidents involving his younger siblings. ROA.141. His statements reflected remorse and acknowledgment of wrongdoing rather than denial or evasion.

14

*of Child Pornography: Non-Production Offenses* (2021) showing minimal re-offense rates among first-time, non-production offenders. ROA.96-97, 315-316.

No victim testified at sentencing, though two requested restitution in the amounts of $10,000 and $7,500. ROA.105-106. The district court adopted those figures without making individualized findings of total loss, causal contribution, or apportionment. ROA.109.

Despite the Government's recommendation of 216 months and the defense's request for a downward variance, the district court imposed the statutory-maximum 240-month term of imprisonment, followed by a lifetime term of supervised release and $17,500 in restitution. ROA.109.

## SUMMARY OF THE ARGUMENT

This appeal arises from a straightforward record and a narrow set of legal errors that, taken singly or together, require vacatur and remand.

First, the Rule 11 colloquy affirmatively misinformed Mr. Quintanilla that he could "appeal any sentence," even though his written plea agreement contained an appellate-rights waiver. The government stood silent. That oral assurance rendered the waiver unknowing and involuntary. At the very least, the oral pronouncement created ambiguity that must be construed in the defendant's favor.

Second, the 240-month statutory-maximum sentence is substantively unreasonable. The district court adopted a mechanically inflated guideline range

15

under § 2G2.2, driven by overlapping enhancements that now appear in nearly every non-production case. It then imposed the harshest possible punishment despite Mr. Quintanilla's youth, lack of criminal record, compliance on release, and ongoing treatment. The result is an outlier that defies § 3553(a)'s parsimony command and the Sentencing Commission's own empirical data showing that such sentences are rarely imposed.

Third, the sentence is procedurally unsound. The court failed to engage the defense's mitigation and policy arguments, offered no individualized explanation for the statutory maximum, and relied on a guideline framework that has been discredited as empirically unsupportable. These omissions deprive this Court of the reasoned explanation that meaningful appellate review requires.

Fourth, the lifetime term of supervised release must be vacated. The court imposed lifetime supervision seemingly as a matter of course, providing no individualized justification under § 3553(a) and making no findings about the necessity of a lifelong term. That omission violates this Court's precedent requiring case-specific reasoning and contradicts the Sentencing Commission's 2025 amendment withdrawing the prior policy favoring statutory-maximum supervision in sex-offense cases.

Finally, the restitution order cannot stand. The district court adopted two lump-sum amounts from boilerplate victim-impact packets without conducting the

16

proximate-cause and apportionment analysis required by *Paroline* and § 2259 or making individualized findings of reliability or causation. A restitution order entered without those determinations constitutes an illegal sentence exceeding the statutory maximum and requires remand for a proper *Paroline*-compliant analysis. Each of these errors independently meets the plain-error standard; together they undermine the fairness, integrity, and public reputation of the proceedings. This Court should vacate the judgment and remand for resentencing.

## ARGUMENT

### I. The Rule 11 colloquy affirmatively misled Mr. Quintanilla about his appellate rights thereby broadening them

### A. Standard of Review

Enforceability of an appellate-rights waiver is reviewed *de novo*. *United States v. Jacobs*, 635 F.3d 778, 780-781 (5th Cir. 2011). Because no objection was lodged below, any Rule 11 error is reviewed for plain error: (1) error, (2) that is plain, (3) affecting substantial rights, and (4) seriously affecting the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732 (1993); *United States v. Vonn*, 535 U.S. 55, 62-63 (2002).

### B. Fifth Circuit precedent requires an accurate and complete Rule 11(b)(1)(N) colloquy

Rule 11(b)(1)(N) requires the district court to personally address the defendant and ensure that any waiver of appellate rights is knowing and voluntary.

17

When the court affirmatively misstates a defendant's appellate rights, the waiver cannot be enforced. *See Jacobs*, 635 F.3d at 781, FN7 (holding that Rule 11(b)(1)(N) obliges the court to inform the defendant of, and determine that he understands, the appellate-waiver provision). Here, the Rule 11 transcript confirms that the court advised Mr. Quintanilla that "under some circumstances you or the Government may have the right to appeal any sentence that a Court imposes." ROA.392. That assurance directly contradicted the written plea agreement, which barred any appeal except from a sentence exceeding the statutory maximum. ROA.122-137. The Government (standing silent) allowed the error to go uncorrected.

This was not an omission but a misstatement. It was a categorical assurance of appellate rights that would have led a reasonable defendant to believe his right to appeal was preserved if he were sentenced to the statutory maximum. Under this Court's decisions in *Jacobs* and consistent with the reasoning in *United States v. Bond,* 414 F.3d 542 (5th Cir. 2005), a waiver cannot be enforced when the defendant's understanding of his appellate rights materially differs from the agreement's legal effect. A waiver of appellate rights is enforceable only if it is informed and voluntary. *United States v. Melancon*, 972 F.2d 566, 567 (5th Cir. 1992). To be valid, the record must show that the defendant knew he had a right to appeal his sentence and that he was relinquishing that right. *Id.* at 568.

18

Other circuits are in accord: when a judge's oral pronouncement conflicts with or broadens a written waiver, the oral statement controls or creates ambiguity construed against the Government. *United States v. Buchanan*, 59 F.3d 914, 917–18 (9th Cir. 1995)(holding district court's oral assurance of a right to appeal controlled over written waiver; government's silence reinforced defendant's reasonable reliance); *United States v. Wood*, 378 F.3d 342, 344, 347-348 (4th Cir. 2004) (holding district court's repeated assurances that defendant could contest drug weight, coupled with the Government's silence, modified the plea agreement; ordering specific performance); *United States v. Saferstein*, 673 F.3d 237, 242-43 (3d Cir. 2012)(holding that a district court's oral statement during the plea colloquy that "improvidently expanded" the defendant's appellate rights created a "plausible and tangible ambiguity" which was construed against the government and permitting appeal of constitutional claims); *United States v. Brown*, 892 F.3d 385, 395-396 (D.C. Cir. 2018)(holding that the district court's plea-colloquy statement describing a broader right to appeal than the written waiver "mischaracterized the meaning of the waiver in a fundamental way" and that the court's oral statement controlled such that the appeal was not barred).

## C. The Rule 11 error affected Mr. Quintanilla's substantial rights

There is a reasonable probability that, but for the court's misadvisement, Mr. Quintanilla would have made a different decision and either insisted on different

terms or proceeding to trial. See *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004). The district court provided an explicit assurance that Mr. Quintanilla could "appeal any sentence," delivered moments before he entered his plea. ROA.392-393.

That assurance carried real weight. Mr. Quintanilla was a first-time offender facing an extraordinary advisory range (360 months to life, capped by the statutory maximum of 240 months) under a guideline whose fairness and proportionality have long been the subject of national debate. A reasonable defendant in his position, only twenty-one years old and with no criminal history, would naturally have placed great value on preserving appellate review of such a sentence particularly where the Government itself recommended a below-guideline term of 216 months. ROA.104-107.

Had the court accurately advised him that he was surrendering that right entirely, there is at least a reasonable probability that he would have reassessed the bargain. A rational defendant could well have sought to negotiate a conditional plea preserving limited appellate rights, pressed for the government's recommendation to be binding, pleaded to the indictment without a plea agreement, or even proceeded to trial to retain the safeguard of appellate review. His willingness to plead was inextricably tied to the court's categorical assurance that he could "appeal any sentence." When that assurance proved false, the plea's balance fundamentally

shifted. That is enough to satisfy the third prong. *Jacobs*, 635 F.3d at 781-783 ("If the district court *accurately* explains the terms and consequences of the waiver of appeal and the defendant states on the record that he understands them, the defendant's later contention that he did not really understand will not invalidate the waiver."

## D. Enforcing the waiver would seriously affect the fairness, integrity, and public reputation of the proceedings

Had the court accurately advised Mr. Quintanilla that he was surrendering that right entirely, there is at least a reasonable probability he would have reassessed the bargain. The plea offered no binding recommendation; only the Government's discretion to recommend a plea and the court's unfettered authority to impose the statutory maximum. For a young, first-time defendant facing a twenty-year prison sentence and a lifetime of supervision, the ability to seek appellate review was one of the few remaining protections. Knowing that safeguard was off the table, a rational defendant may not have entered into a plea.

The Government's inaction compounds the problem. Under this Court's precedent, an appeal waiver is enforceable only if it is informed and voluntary. *See Bond*, 414 F.3d at 544 (describing two-step inquiry and reiterating knowing-and-voluntary requirement); *United States v. Portillo*, 18 F.3d 290, 292 (5th Cir. 1994); *Melancon*, 972 F.2d at 567-68.

When the government invokes a waiver, it assumes responsibility for ensuring that the record establishes its validity, an obligation that flows from its distinctive role as a representative of the public interest and a guardian of the integrity of the criminal process. Here, the prosecutor surely heard the district court tell Mr. Quintanilla that he could "appeal any sentence" and yet remained silent. That silence invited error and undermined the fairness and integrity of the proceeding. By standing mute as the court misstated the terms of the plea bargain the Government allowed the potential waiver of appellate rights to become legally and factually meaningless. The plain-error doctrine exists to correct exactly this kind of breakdown in the integrity of judicial proceedings. Allowing the Government to benefit from an error it could have (and should have) prevented would erode confidence in Rule 11 proceedings and signal to district courts and defendants alike that the solemn assurances given in open court are hollow formalities.

## E. Because the Rule 11 colloquy was defective, the appellate waiver cannot be enforced

When a plea colloquy fails to satisfy Rule 11(b)(1)(N) by misstating or omitting the scope of appellate rights, this Court treats the waiver as invalid and reaches the merits of the underlying sentencing issues. See *United States v. Baty*, 980 F.2d 977, 979 (5th Cir. 1992); cf. *Jacobs*, 635 F.3d 781-83 (enforcing waiver where the district court correctly explained its scope). That approach accords with the reasoning of sister circuits emphasizing that criminal defendants, "need to be

able to trust the oral pronouncements of district court judges." *Brown*, 892 F.3d at 398. Where a district court's mischaracterization of a material term is sufficiently pervasive to alter a defendant's understanding of the terms of his plea, the Government's affirmative acquiescence in the court's explanation can serve to broaden or modify the terms of the plea agreement.

Accordingly, the appellate waiver should not be enforced, and the Court should proceed to consider the merits of Mr. Quintanilla's sentencing, supervised release, and restitution claims.

## II.     The 240-month statutory-maximum term is substantively unreasonable

### A. Standard of Review

Substantive reasonableness is reviewed for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). When a defendant preserves a substantive challenge, the Court must determine whether the sentence is "sufficient, but not greater than necessary" to fulfill the purposes of sentencing set forth in 18 U.S.C. § 3553(a). *Holguin-Hernandez v. United States*, 589 U.S. 169, 170 (2020)("A defendant who, by advocating for a particular sentence, communicates to the trial judge his view that a longer sentence is "greater than necessary" has thereby informed the court of the legal error at issue in an appellate challenge to the substantive reasonableness of the sentence.")

23

**B. A statutory-maximum term for a first-offense, non-production plea is an outlier in this Circuit and nationwide**

Mr. Quintanilla's advisory range of 360 months to life, capped at 240 months, resulted from a cascade of overlapping § 2G2.2 enhancements that now appear in nearly every non-production case. The PSR added levels for prepubescent minors (+2), distribution for value (+5), sadistic or violent depictions (+4), a "pattern of activity" (+5), use of a computer (+2), and 600 or more images (+5). ROA.144-145. The resulting offense level of 42 is mathematically severe but substantively unilluminating, treating almost all modern child pornography offenses as equally aggravated regardless of actual conduct.

The Sentencing Commission's 2021 study documented that the § 2G2.2 enhancements now apply in most non-production prosecutions: computer use (95%+), prepubescent victims (~99%), sadistic conduct (84%), and 600+ images (77.2%). U.S. Sentencing Comm'n, *Federal Sentencing of Child Pornography: Non-Production Offenses* 19, 31 (2021). The result are guideline ranges that treat typical cases as severely aggravated. In line with that reality, the Commission's FY2024 data show that courts rarely sentence within range: only 37.7% of child-pornography sentences were within the range, while 53.2% were downward variances (average reduction 36.7%), with an average sentence of 115 months nationwide. U.S. Sentencing Comm'n, *Quick Facts: Child Pornography Offenses, Fiscal Year 2024* (2025).

24

Against that national backdrop, the statutory-maximum term imposed here is a clear outlier, producing the kind of unwarranted disparity § 3553(a)(6) forbids. See *United States v. Dorvee*, 616 F.3d 174, 187–88 (2d Cir. 2010) ("District judges are encouraged to take seriously the broad discretion they possess in fashioning sentences under § 2G2.2 - ones that can range from non-custodial sentences to the statutory maximum - bearing in mind that they are dealing with an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results."); *United States v. Jenkins*, 854 F.3d 181, 194 (2d Cir. 2017) (vacating a 225-month non-production sentence as substantively unreasonable).

## C. The district court failed to justify a sentence which was greater than necessary under § 3553(a).

A court abuses its discretion when it fails to tie the sentence to defendant-specific factors or to explain why a lesser term would not suffice. *Rita v. United States*, 551 U.S. 338, 357 (2007). Here, the court adopted the PSR wholesale and pronounced the statutory maximum without addressing:

- Mr. Quintanilla's age, first-offender status, and documented treatment engagement. ROA.139, 146.

- his history of childhood sexual victimization and consistent compliance on pretrial release. ROA.97, 141, 317.

25

- the Commission's empirical findings undermining the policy basis for § 2G2.2 (U.S. Sentencing Comm'n, *Non-Production Offenses Report*, supra.)

Nothing in the record explains why a 216-month sentence (the Government's own recommendation) or another below-range term would not have achieved the objectives of deterrence, protection of the public, and rehabilitation. The district court seemingly treated the guideline ceiling as dispositive and made no finding that additional incarceration would advance any § 3553(a) purpose. That is procedural defect and substantive excess in equal measure.

## D. The statutory-maximum term overstates risk and undermines § 3553(a)'s parsimony principle.

Empirical data confirm that first-time, non-production offenders like Mr. Quintanilla present a low risk of reoffending. The Sentencing Commission's 2021study found that only 4.3 percent of defendants were rearrested for a sex offense within three years of release. U.S. Sentencing Comm'n, *Federal Sentencing of Child Pornography: Non-Production Offenses* 7 (2021). Age and first-offender status correlate with declining risk. *See Jenkins*, 854 F.3d at 197-98. By the time of his release, Mr. Quintanilla will be middle-aged and engaged in treatment which supports a lower sentence under § 3553(a)(2)(C) and (D).

26

A 240-month term thus exceeds what is "sufficient, but not greater than necessary" and cannot be squared with § 3553(a)(6)'s mandate to avoid unwarranted sentence disparities among similarly situated defendants.

## E. Remedy

By relying on a flawed guideline and disregarding § 3553(a)'s individualized mandate, the district court imposed a sentence that cannot stand. This Court should vacate and remand for resentencing informed by the statute and the Commission's empirical work.

## III.    The Sentence is Procedurally Unreasonable

## A. Standard of Review

Procedural reasonableness is reviewed for abuse of discretion. *Gall*, 552 U.S. at 51. The reviewing court must ensure that the district court correctly calculated the advisory Guidelines range, treated the Guidelines as advisory, considered the § 3553(a) factors, responded to nonfrivolous arguments for a lower sentence, and adequately explained the sentence imposed. *Rita*, 551 U.S. at 357; *United States v. Mondragon-Santiago*, 564 F.3d 357, 362 (5th Cir. 2009).

## B. The district court failed to address non-frivolous mitigation and policy arguments

A sentencing court commits procedural error if it fails to adequately explain the sentence or to address a party's nonfrivolous arguments for a lower sentence.

See *Rita v. United States*, 551 U.S. 338, 356–57 (2007); *United States v. Sanchez*, 667 F.3d 555, 567-68 (5th Cir. 2012).

Here, defense counsel presented detailed mitigation supporting a downward variance:

- Mr. Quintanilla's age, first-offender status, and documented treatment engagement. ROA.139, 146.

- his history of childhood sexual victimization and compliance on pretrial release. ROA.97, 141, 317.

- the Sentencing Commission's 2021 report. ROA.317.

These arguments went to the heart of § 3553(a)'s mandate (rehabilitation, proportionality, and avoidance of unwarranted disparity) and required a reasoned response. Yet the sentencing transcript reflects none. After briefly noting that "a lot of time was put in on this" and that such cases "deserve the time," the court simply stated: "[a]ll right. I've considered 18, United States Code, Section 3553(a). I feel that the following sentence is appropriate in this case: … 240 months." ROA.108–109. In contrast to *Sanchez*, 667 F.3d 568, the district court made no mention that it had "considered the arguments of counsel."

A 20-year sentence imposed on a 21-year-old first offender is among the most consequential acts a court can undertake. It determines not only the next two decades of a young man's life but the trajectory of his future and his family's future. Such a

judgment demands careful deliberation, a transparent weighing of the § 3553(a) factors, and an explanation commensurate with its gravity. The record here shows none. The pronouncement of "240 months" was unaccompanied by reasoning, unresponsive to mitigation, and devoid of reflection on how such a severe sentence fulfills the statute's purposes. Sentencing should not be a reflexive recitation of terms but a solemn exercise of judgment grounded in individualized assessment. The absence of that deliberation renders this sentence arbitrary in appearance and unsustainable in law.

In *Mondragon-Santiago*, 564 F.3d at 362-64, and *United States v. Tisdale*, 264 F. App'x 403, 412 (5th Cir. 2008), the Fifth Circuit held that district courts commit procedural error under *Rita* when they fail to adequately explain their sentencing decisions as required by 18 U.S.C. § 3553(c), even when the sentences imposed fall within the advisory Guidelines range.

Here, the district court's conclusory pronouncement does not demonstrate a "reasoned basis for exercising [the court's] own legal decisionmaking authority." *See Rita*, 551 U.S. at 356; *Gall*, 552 U.S. at 50. The omission is particularly significant here. The defense drew the district court's attention to the 2021 report and the all but inherent nature of the child pornography guidelines. Yet the district court neither acknowledged nor mentioned either. See *United States v. Miller*, 665 F.3d 114, 119, 124–31 (5th Cir. 2011) (noting that "we do not blindly approve a

29

within-Guidelines sentence, even though it carries a rebuttable presumption of reasonableness," and addressing challenges to § 2G2.2 while distinguishing *Dorvee*); *United States v. Herrera-Garduno*, 519 F.3d 526, 530 (5th Cir. 2008) (recognizing that a district court may vary based on a policy disagreement with a guideline); *United States v. Henderson*, 649 F.3d 955, 956, 963 (9th Cir. 2011) (holding courts may vary from § 2G2.2 on policy grounds).

The district court's failure to articulate any reason for the sentence leaves the judgment unsupported by the explanation the law demands.

## C. The court treated the inflated guideline as dispositive and ignored its advisory nature

The district court's treatment of the Guidelines as effectively mandatory compounded the procedural error. It adopted the PSR's offense-level calculation without analysis and offered no reason for selecting the 240-month statutory maximum as the only appropriate outcome. But a sentencing court "may not presume that the Guidelines range is reasonable." *Nelson v. United States*, 555 U.S. 350, 352 (2009) (per curiam). Nor may a court simply apply the top of an inflated range without acknowledging its flaws, where those flaws stem from a Guideline the Sentencing Commission itself has disavowed as lacking empirical support. *See Kimbrough v. United States*, 552 U.S. 85, 101-10 (2007).

By mechanically applying § 2G2.2 as though it were binding, the court failed to exercise the independent judgment the law requires. That error is not cured by the

30

fact that the sentence fell within the guidelines. *Rita*, 551 U.S. at 356-57, requires that the sentencing record reflect the court's consideration of the parties' arguments, the § 3553(a) factors, and an individualized assessment of the defendant's circumstances. See also *Gall*, 552 U.S. at 49-50 (applying that requirement to sentences outside the Guidelines).

## D. The lack of reasoning precludes meaningful appellate review

Even though this case involved no formal departure, the sentence imposed (a twenty-year statutory maximum on a twenty-one-year-old first offender) was so extreme that it required far more explanation than the record provides. *Gall* makes clear that "a major departure should be supported by a more significant justification than a minor one." 552 U.S. at 50. The same principle applies here: when a court selects the most severe punishment the law allows, it must articulate why any lesser term would be insufficient. The district court gave none. Its silence leaves the impression that 240 months was chosen by default rather than through individualized reasoning. A sentence of this magnitude, effectively defining the remainder of a young man's formative life, demands more than a number announced without justification. Because the record contains no reasoned basis for the court's choice, the sentence cannot be sustained.

## E. Remedy

This Court should vacate the sentence and remand with instructions that the district court (1) meaningfully consider the defense's mitigation and policy arguments, (2) treat § 2G2.2 as advisory rather than presumptive, and (3) provide a reasoned, defendant-specific explanation.

## IV.   The lifetime term of supervised release must be vacated.

## A. Standard of Review

Because defense counsel did not object to the lifetime term of supervised release, review is for plain error. See *United States v. Ellis*, 720 F.3d 220, 227 (5th Cir. 2013). Even under that standard, the district court's unexplained imposition of lifetime supervision was clear error affecting substantial rights.

## B. The district court imposed a lifetime term of supervised release without individualized justification

In April 2025, the U.S. Sentencing Commission approved an amendment to the supervised-release policy statements, scheduled to take effect on November 1, 2025, withdrawing its prior guidance favoring statutory-maximum terms in sex-offense cases and replacing it with a directive that courts conduct an individualized assessment of each defendant's history, characteristics, and risk profile when determining the length of supervision. *See* U.S. Sent'g Comm'n, *Amendment-In-*

32

*Brief: Supervised Release* 1 (Apr. 2025)[3]. This revision reinforces what this Court has long held: that a lifetime term of supervised release cannot be imposed as a matter of course, but must rest on a reasoned, case-specific justification under § 3553(a). *See United States v. Alvarado*, 691 F.3d 592, 597–98 (5th Cir. 2012); *United States v. Fraga*, 704 F.3d 432, 440 (5th Cir. 2013).

Here, the district court gave no explanation for imposing lifetime supervision. *See* ROA.109. The record contains no finding that such a term was necessary to protect the public, deter future misconduct, or promote rehabilitation. The absence of any individualized reasoning renders the term procedurally defective and requires remand under both the Commission's updated policy framework and this Court's precedent.

## C. Remedy

The Court should vacate the supervised-release portion of the judgment and remand for resentencing with instructions that the district court reconsider the length of supervision in light of the Sentencing Commission's 2025 amendments and this Court's precedent requiring an individualized explanation.

---

[3] Prior thereto § 5D1.2(b) (2023) stated, "If the instant offense of conviction is a sex offense, the statutory maximum term of supervised release is recommended."

**V.    Restitution: Remand is required for a *Paroline*-compliant causation and apportionment analysis.**

### A. Standard of Review

Because defense counsel did not object to the restitution order below, review is for plain error. *See* Fed. R. Crim. P. 52(b). Reversal is warranted when there is (1) error, (2) that is clear or obvious, (3) affecting substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See United States v. Olano*, 507 U.S. at 732. Restitution imposed without statutory authority or required findings satisfies all four prongs. *See United States v. Winchel*, 896 F.3d 387, 389 (5th Cir. 2018); *United States v. West*, 99 F.4th 775, 780 (5th Cir. 2024) (per curiam).

### B. The district court conducted no *Paroline* analysis and made no findings of causation or apportionment

Record evidence confirms that the restitution orders were based solely on boilerplate submissions, without any individualized proof or findings. This was contrary to *Paroline v. United States*, 572 U.S. 434 (2014). The only restitution materials in the record are two mass-produced packets submitted by private victim firms: a nine-page "Aprilblonde" request from Restore the Child, PLLC seeking $10,000 (ROA.176-184), and a letter from Deborah A. Bianco, P.S. requesting $7,500 for the "Sweet White Sugar" victim (ROA.187–197). Each consists of a generic narrative, stock citations to *Paroline*, and tables of projected lifetime losses untethered to this defendant's conduct. Neither submission contains an affidavit,

34

expert testimony, or causal analysis specific to Mr. Quintanilla. ROA.173-283. The Probation Office attached these letters to the PSR addenda and reported the combined total ($17,500) without any assessment of reliability, proximate cause, or factual support. ROA.185-186. No hearing was held, and no findings were entered.

Although the packets include lengthy psychological and economic reports prepared years earlier for unrelated proceedings, the district court never authenticated them or tied them to any loss proximately caused by Mr. Quintanilla's conduct. The Government's reliance on boilerplate victim-impact statements and restitution templates was therefore insufficient to meet its evidentiary burden. Nothing in § 2259 or this Court's precedent allows a district court to adopt such materials implicitly without findings of reliability and causation. As this Court explained in *West*, 99 F.4th at 779-80, reaffirming *Winchel*, 896 F.3d at 389, an order of restitution under § 2259 that is entered without the required proximate-cause analysis constitutes an illegal sentence (i.e., punishment exceeding the statutory maximum).

The district court made no findings that the victims' submissions were accurate, reliable, or causally linked to Mr. Quintanilla's conduct. Nor did it address any of the apportionment factors required by *Paroline* - such as the number of images involved, whether Mr. Quintanilla distributed them (and to what extent), or how other offenders contributed to the victims' overall losses. Absent such findings,

35

meaningful appellate review is impossible, and the restitution order lacks any lawful foundation under § 2259.

## C. The error satisfies every element of plain-error review

The district court's failure to conduct the *Paroline* analysis or to make proximate-cause findings is a legal error and a clear deviation from governing law. Second, the error is plain in light of *Paroline*, 572 U.S. at 434; and *West*, 99 F.4th 775. Third, the error affected Mr. Quintanilla's substantial rights by imposing $17,500 in restitution unsupported by evidence or findings. Finally, as *West* held, an order of restitution entered "absent a proximate-cause analysis is an illegal sentence in excess of the statutory maximum" and leaving such an order uncorrected "would seriously affect the fairness, integrity, and public reputation of judicial proceedings." 99 F.4th at 781.

## D. Remand is required for a full *Paroline*-compliant determination

The proper remedy is vacatur and remand for a new restitution hearing. On remand, the district court should determine the full amount of each victim's losses, identify the portion proximately attributable to Mr. Quintanilla's conduct, and apply the *Paroline* factors to apportion a reasonable, evidence-based share. The court must make explicit findings supported by the record regarding reliability and causation for each amount awarded. Only by following those steps can the restitution order comply with § 2259 and safeguard the fairness and integrity of the proceedings.

## CONCLUSION

The judgment below cannot stand. The plea colloquy failed to comply with Rule 11(b)(1)(N), rendering any appellate waiver unenforceable. The statutory-maximum sentence imposed on a first-time, non-production offender is both procedurally and substantively unreasonable. The court disregarded uncontroverted mitigation and policy arguments, seemingly treated an empirically discredited guideline as mandatory, and imposed lifetime supervision and restitution without the individualized findings that the law requires.

Each of these errors independently warrants relief; together they undermine the fairness, integrity, and public reputation of the judicial process.

Accordingly, Mr. Quintanilla respectfully asks this Court to (1) vacate the judgment and sentence in their entirety; (2) remand for resentencing with instructions that the district court treat § 2G2.2 as advisory, fully considers the § 3553(a) factors and mitigation evidence, and articulates individualized reasons for the terms of imprisonment, supervision, and restitution; and (3) grant any further relief this Court deems just and proper.

SUBMITTED BY:

/s/ Daniel DeMaria
Daniel DeMaria
Law Offices of Daniel DeMaria
15 Cottage Avenue, Fl. 4
Quincy, MA 02169

## CERTIFICATE OF SERVICE

I, Daniel DeMaria, hereby certify that on this 20th day of October 2025, the Appellant's Brief was served via ECF to counsel for the Plaintiff-Appellee, the U.S. Attorney's Office. I further certify that: 1) all privacy redactions have been made pursuant to 5TH CIR. R 25.2.13; 2) the electronic submission is an exact copy of the paper documents pursuant to 5TH CIR. R 25.2.1; and 3) the document has been scanned for viruses with the most recent version of McAfee Total Protection and is free of viruses. Further, I certify that I sent a paper copy via U.S. Mail on today's date to Mr. Quintanilla.

/s/ Daniel DeMaria
Daniel DeMaria

## CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1:  this document contains 5702 words.

2.  This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman size 14 font.

/s/ Daniel DeMaria
Daniel DeMaria